CRAWLEY, Judge.
In May 2000, the Madison County Department of Human Resources (“DHR”) filed a petition to terminate the parental rights of N.F. (the “mother”) and W.R.F. Ill (the “father”) as to their children W.R.F. IV and S.F. (the “children”). J.P., the maternal grandmother, filed a motion to intervene, alleging that placing the children in her custody is a viable alternative to termination of the mother’s parental rights. Following an ore tenus trial, the juvenile court ordered the termination of both parents’ parental rights and found that placing the children in the custody of the maternal grandmother is not a viable alternative to terminating the parents’ paternal rights. The mother and the mater *113 nal grandmother each appeal. The father does not appeal.
The termination of parental rights is a drastic measure, and the courts gravely consider such action. Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). A natural parent’s prima facie right to the custody of his or her child is outweighed only by clear and convincing evidence that termination of parental rights is in the best interests of the child. L.N. v. State Dep’t of Human Res., 619 So.2d 928, 929 (Ala.Civ.App.1993). The juvenile court considers the parent’s physical, financial, and mental abilities to care for the child in order to determine the child’s best interests. J.L.B. v. State Dep’t of Human Res., 608 So.2d 1367, 1368 (Ala.Civ.App.1992). The juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. Beasley, at 954.
We address the mother’s appeal first. The mother argues that the juvenile court erred by not finding the maternal grandmother to be a viable alternative to the termination of her parental rights. She does not appeal the juvenile court’s finding that the children are dependent. DHR contends that custody with the maternal grandmother is not a viable alternative, for two reasons: (1) the maternal grandmother had refused to take custody of the children in the past; and (2) the maternal grandmother was not a good mother to her own children.
DHR presented evidence indicating that the maternal grandmother had had custody of the children after they were removed from the mother’s home a few years ago. The maternal grandmother then became engaged and her fiancé did not want the responsibility of rearing the children. The maternal grandmother asked friends — a married couple — if they would keep the children. The couple agreed, the maternal grandmother transferred the children to them, and then the maternal grandmother informed DHR of the change in the children’s custody. DHR licensed that couple as foster parents. The couple divorced and relinquished custody of the children. DHR again asked the maternal grandmother if she would take the children, and she declined. The maternal grandmother testified that at that time her husband was terminally ill and that she was not able to care for him and the children at the same time. Shortly before her husband’s death, she filed the petition to intervene in the termination-of-parental-rights action instituted against the mother, requesting custody of the children. The maternal grandmother’s husband died about one week before the trial.
The maternal grandmother testified that she could now devote sufficient time to the children because she no longer had to care for her husband. She testified that she lives in a four-bedroom house where each child would have a bedroom. She testified that the school the children would attend is a good school and provides after-school care. The maternal grandmother has a successful hair-styling job at a local department store and makes about $35,000 a year. She testified that she can adjust her hours around the children’s school schedule and does not anticipate that they would have to stay in after-school care for more than about one hour each day. She testified that she is currently deciding which health-insurance arrangement would give the children the most coverage at the best cost. She testified that her husband had mortgage insurance that is paying the balance owed on the house. She affirmatively *114 responded to questions about whether she could comply with orders of the court that might restrict the mother’s access to the children. DHR presented evidence indicating that the maternal grandmother had not had custody of her two children, including the mother, for much of their minority, that both of her children have substance-abuse problems, and that neither of her children has adjusted to the responsibilities of being an adult.
DHR presented evidence indicating that when the mother was a teenager (more than 10 years ago), she ran away from her father’s home. The mother’s father and the maternal grandmother were divorced, and the father had custody. Kansas authorities eventually placed the mother in a foster home. While the mother was in this foster home, the maternal grandmother decided to move from Kansas. The Kansas authorities informed the maternal grandmother that if she left Kansas she would have difficulties in being considered as custodian of the mother once the mother left her foster home. The record indicates that the maternal grandmother moved from Kansas anyway. The juvenile court, in its judgment, and DHR, in its brief, place much emphasis on these events in determining that custody with the maternal grandmother is not a viable alternative to terminating the mother’s parental rights.
Both of DHR’s concerns regarding the maternal grandmother’s ability to be a custodian and an alternative to termination of the mother’s parental rights address the past conditions and past ability of the maternal grandmother to be a custodian. As stated above, the evidence regarding the maternal grandmother’s parenting involves events that occurred more than 10 years in the past. Moreover, the evidence, as shown above, demonstrates the maternal grandmother’s present ability to be a custodian of the children. This court reversed a judgment terminating parental rights where a grandmother requested custody of the children as an alternative to termination of parental rights. V.M. v. State Dep’t of Human Res., 710 So.2d 915 (Ala.Civ.App.1998). In that case, DHR opposed the grandmother’s custody because the grandmother had refused custody of the children a few years earlier and because the grandmother had not taken the initiative to complete the requisite paperwork to become a custodian. This court stated:
“All of DHR’s objections to the grandmother as a relative resource were based on past history, however, and there was no evidence that she had been considered in light of her present circumstances, her present willingness to be a resource for the children, and the present improvement in the mother’s condition. DHR must present ‘evidence of recent attempts to locate viable alternatives in order to establish that termination of parental rights is the least drastic alternative.’ Bowman [v. State Dep’t of Human Resources, 534 So.2d 304, 306 (Ala.Civ.App.1988) ].”
710 So.2d at 921.
We conclude that the juvenile court erred by not considering custody with the maternal grandmother as a viable alternative. As stated above, the maternal grandmother testified that she is presently able to care for the children in her home, and she presented evidence indicating that she has sufficient resources to care for the children. Therefore, we reverse the juvenile court’s judgment terminating the mother’s parental rights. We instruct the juvenile court on remand to consider the maternal grandmother’s present ability to care for the children in evaluating whether her having custody is a viable alternative *115 to terminating the mother’s parental rights.
The maternal grandmother argues two issues on appeal. First, she argues that the juvenile court erred by not awarding her custody of the children. This issue has been disposed of in our resolution of the mother’s appeal. The maternal grandmother also argues that an award of custody to the maternal great-grandparents is a viable alternative to termination of the mother’s parental rights. We conclude that this is an argument the mother should have made and that the maternal grandmother is not the proper party to make this argument.
The judgment terminating the mother’s parental rights is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., concurs.
MURDOCK, J., concurs in the result.
THOMPSON and PITTMAN, JJ., dissent.