I do not believe that DHR established, by clear and convincing evidence, that the mother was unwilling or unable to discharge her responsibilities to the children or that the conditions that led to the children's removal were unlikely to change in the foreseeable future. Therefore, I respectfully dissent.
The evidence was undisputed that, at the time of the termination hearing, the mother had had suitable housing and employment for 10 months. She had been sober for a year and was attending weekly AA meetings. The case workers admitted that the mother had apparently made a "turnaround." They questioned only whether the turnaround would be permanent, given the mother's longstanding problems with alcohol dependency and her failure to have completed "New Directions," an intensive outpatient treatment program for substance abusers.
The mother testified that in December 2001 she consulted a mental-health professional who diagnosed her as suffering from major depression and prescribed her an antidepressant medication. The mother said she realized that she had probably had problems with depression since her teenage years. She also testified that she recognized that she had not made wise choices with regard to her male companions. She stated that the antidepressant medication was helping her, that she no longer had a desire to drink, and that she did not need a man in her life. The mother explained that she had not completed the New Directions substance-abuse program because the counselor of that program was "totally against taking any kind of medication" and, as the mother stated, "the medication that I'm on I can't say it enough . . . to me that's the greatest thing that ever happened in my life as far as getting my life back together, being myself, or being like I always wanted to be."
DHR decided to move for termination of the mother's parental rights in 2000, but it postponed the matter for 90 days after the mother married her third husband, Mr. L., in February 2000. The record indicates that DHR decided to give the mother additional time to get her life in order because it thought Mr. L. was regularly employed, would be a good provider, and might be a stabilizing influence on the mother. The mother, however, left Mr. L. in June 2000 because, she said, he was drinking alcohol and selling marijuana.
This court has decided several parental-rights-termination cases in which the issue has been "whether the parent's recent progress was substantial and consistent *Page 1037 
and, therefore, indicative of a willingness and ability to maintain that progress, or whether the parent's efforts were late, incomplete and, therefore, unconvincing, measures taken only in anticipation of the termination-of-parental-rights hearing." J.D. v. Cherokee County Dep't of Human Res.,858 So.2d 274, 277 (Ala.Civ.App. 2003); see also P.W. v. State Dep'tof Human Res., 822 So.2d 423 (Ala.Civ.App. 2001); V.M. v. StateDep't of Human Res., 710 So.2d 915 (Ala.Civ.App. 1998); andBowman v. State Dep't of Human Res., 534 So.2d 304
(Ala.Civ.App. 1988).
I recognize that this court cannot substitute its judgment for that of the trial court on questions of fact. However, in light of the mother's recent progress, I do not believe that the evidence was clear and convincing that she was unwilling or unable to discharge her responsibilities to her children.