PER CURIAM.
On May 2, 2013, the Franklin County Department of Human Resources (“DHR”) *34 filed a petition to terminate the parental rights of R.H. (“the father”) and C.H. (“the mother”) to their youngest child (“the child”). While the petition was pending, the Franklin Juvenile Court entered a judgment on March 26, 2013, terminating the parental rights of the parents to their three older children. The mother and the father separately appealed, and this court entered orders affirming that judgment, without an opinion, on December 6, 2013. See C.H. v. Franklin Cnty. Dep’t of Human Res. (No. 2120526, Dec. 6, 2013), 171 So.3d 695 (Ala.Civ.App.2013) (table); and R.H. v. Franklin Cnty. Dep’t of Human Res. (No. 2120550, Dec. 6, 2013), 171 So.3d 695 (Ala.Civ.App.2013) (table). Our supreme court subsequently denied the mother’s and the father’s petitions for a writ of certiorari to this court involving those same appeals. See Ex parte C.H. (No. 1130322, Feb. 21, 2014), — So.3d -(Ala.2014) (table); and Ex parte R.H. (No. 1130321, Feb. 21, 2014), — So.3d -(Ala.2014) (table).
DHR amended its termination petition in this action to add the termination of the parents’ parental rights to their three older children as an additional basis upon which it sought to terminate the parents’ parental rights to the child. On April 21, 2014, the juvenile court conducted a hearing on DHR’s petition. At the outset of the hearing, the attorney for DHR requested that the juvenile court take “judicial notice of everything that’s set out in the [ajmended [pjetition.” Also, upon questioning by the juvenile court, the attorneys for the parents agreed that the juvenile court could take judicial notice that the parental rights of the parents to their three older children had been terminated by the March 26, 2013, judgment of the juvenile court, which, as noted, had been affirmed on appeal.
On May 27, 2014, the juvenile court entered a judgment terminating the parental rights of both the mother and the father to the child. Both the mother and the father timely appealed. This court consolidated the appeals ex mero motu.
“The juvenile court’s judgment based on ... ore tenus evidence is presumed to be correct and will not be overturned absent a showing that the judgment is plainly and palpably wrong. S.B.L. v. Cleburne County Dep’t of Human Res., 881 So.2d 1029, 1031-32 (Ala.Civ.App. 2003).
•“ ‘ “A parent has a prima facie right to custody of his or her child and this right can be overcome only by clear and convincing evidence that the child’s best interests would be served by permanently terminating the parent’s custody.” Ex parte State Dep’t of Human Res., 624 So.2d 589, 591 (Ala.1993) (citing R.C.M. v. State Dep’t of Human Res., 601 So.2d 100 (Ala.Civ.App.1991)). When the State is petitioning to terminate a parent’s parental rights, the trial court must first determine if the child is dependent and then must examine whether all viable alternatives to termination have been explored. Ex parte Beasley, 564 So.2d 950 (Ala.1990). On appeal, the trial court’s determination is presumed to be correct, and it will not be reversed absent a showing that the decision is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte State Dep’t of Human Res., supra.’
“W.C. v. State Dep’t of Human Res., 887 So.2d 251, 256 (Ala.Civ.App.2003). The paramount consideration in a case involving the termination of parental rights is the best interests of the children. Q.F. v. Madison County Dep’t of Human Res., 891 So.2d 330, 335 (Ala.Civ.App.2004); S.B.L. v. Cleburne Coun *35 ty Dep’t of Human Res., 881 So.2d at 1032; and J.L. v. State Dep’t of Human Res., 688 So.2d 868, 869 (Ala.Civ.App. 1997).”
C.T. v. Calhoun Cnty. Dep’t of Human Res., 8 So.3d 984, 987 (Ala.Civ.App.2008).
At the hearing in this matter, DHR presented the testimony of two witnesses, Sally Clark and Stacy Carden. Clark testified that, in March 2010, she investigated a report that had led to the removal of the parents’ three older children from the family’s home. Clark stated that she was aware that the juvenile court had subsequently terminated the parental rights of the parents to those three children.
The child was born in April 2012, almost one year before the entry of the judgment that terminated the parents’ parental rights to his three siblings. Clark testified that hospital staff notified DHR of the birth of the child and that she investigated that report; Clark stated that she then sought and obtained a court order allowing DHR to pick up the child from the hospital and place him in foster care. The child, who was two years old at the time of the hearing in this matter, has remained in foster care since his birth. Clark testified that she was not the foster-care worker for the child and that her involvement with the child had ended after the child was placed in foster care.
Carden testified that she was the foster-care worker for the three older children and that she was also the foster-care worker assigned to the child. Carden testified that, at an April 2012 Individualized Service Plan (“ISP”) meeting conducted shortly after the child’s birth, DHR determined that the permanency plan for the child was to reunite him with the parents and that the goals for the parents’ reunification with the child were the same as those already established in the earlier ISPs for the three older children. Carden did not specifically list all the reunification goals in her testimony.
Carden testified that, after the juvenile court terminated the parents’ parental rights to the three older children in March 2013, DHR changed its permanency plan for the child to seek to terminate the parents’ parental rights to the child. At that time, the child had been in foster care for one year. Carden testified that, after the permanency plan changed, DHR representatives were no longer required to visit the mother’s home but that, nevertheless, she did so on two occasions. We note that § 12-15-312(c), Ala.Code 1975, provides that “[rjeasonable efforts shall not be required to be made with respect to a parent of the child if the juvenile court has determined that the parental rights of the parent to a sibling of the child have been involuntarily terminated.” Carden stated that, at the time of the termination hearing, it had been almost one year since she had last visited the mother’s home. Car-den also testified that DHR had sought relative placements for the child but had concluded that none were appropriate because the relatives were either unwilling or unable to care for the child.
Carden denied that, in seeking to terminate the parents’ parental rights to the child, DHR was relying solely on the termination of the parents’ parental rights to the three older children, although she conceded that it was a factor upon which DHR was relying. See § 12 — 15—319(a)(8), Ala.Code 1975 (one of the bases a juvenile court may consider in determining whether to terminate parental rights is whether the parent’s parental rights to the child’s sibling have been terminated). Carden testified that, after DHR’s permanency plan for the child changed to seeking the termination of the parents’ parental rights, the parents still could have worked to achieve their reunification goals. Howev *36 er, Carden testified that the parents had not achieved the reunification goals at the time df the termination hearing in this matter.
Carden testified that the mother had passed her two most recent drug screens, which were conducted in June and September 2013, and that she was not aware of any evidence indicating that the mother had used drugs in the last 10 months. Carden also testified that the father had tested positive for cocaine at his “last drug screen,” but the record contains no evidence regarding the date of that drug screen. The father’s attorney, in his questioning of Carden, stated that the father was “in drug rehab”; the attorney did not attempt to explain the nature of any treatment the father might have been receiving. We also note that the representations of counsel are not evidence, Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App. 2005), and, therefore, the attorney’s statement indicating that the father was participating in some form of substance-abuse treatment did not constitute admissible evidence. Further, Carden testified that she was unaware that the father was obtaining any such treatment. Carden explained that, at the time of an ISP meeting held two weeks before the hearing in this matter, neither parent was seeking substance-abuse treatment. Therefore, there was no admissible evidence before the juvenile court indicating that either parent was in or had attended a drug-treatment program.
Carden testified that the parents had regularly visited with the child, that she had not observed any inappropriate behavior during those visits, and that the child had some bond with the parents. Carden testified that the child, who was two years old at the time of the hearing, did not seem to mind the visits and did not cry during the visits.
Section 12-15-319, Ala.Code 1975, provides the grounds for the termination of parental rights; in pertinent part, that Code section provides:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“(8) That parental rights to a sibling of the child have been involuntarily terminated .... ”
Thus, by its plain and unambiguous language, see Ex parte Achenbach, 783 So.2d 4, 7 (Ala.2000) (requiring courts to give effect to words of statute), § 12-15-319 authorizes a juvenile court to terminate parental rights as a result of the inability or unwillingness of a parent to discharge his or her parental responsibilities to and for a child. In making that determination, a juvenile court shall consider, among other things, that a parent’s parental rights to a sibling of a child have been involuntarily terminated, but a juvenile court is not compelled by that fact to terminate the parental rights to the child at issue.
In this case, in the May 27, 2014, judgment at issue, the juvenile court found that the parents’ parental rights to the child’s *37 siblings had been terminated, and it determined that the parents were unable to discharge their responsibilities to the child. In their briefs on appeal, the parents contend that the juvenile court erred in terminating them parental rights because, they maintain, DHR failed to meet its burden of presenting, and the juvenile court did not consider, evidence regarding their current circumstances. “ ‘This court has consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.’ ” P.H. v. Madison Cnty. Dep’t of Human Res., 937 So.2d 525, 531 (Ala.Civ.App.2006) (quoting D.O. v. Calhoun Cnty. Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003), and citing T.H. v. State Dep’t of Human Res., 740 So.2d 1089, 1092 (Ala.Civ.App.1998), and Bowman v. State Dep’t of Human Res., 534 So.2d 304, 306 (Ala.Civ.App.1988)). In addition to evidence pertaining to current conditions, the juvenile court may consider “ ‘ “the past history of the family.” ’ ” M.J.C. v. G.R.W., 69 So.3d 197, 207 (Ala.Civ.App.2011) (quoting A.R. v. State Dep’t of Human Res., 992 So.2d 748, 760 (Ala.Civ.App.2008), quoting in turn T.B. v. Lauderdale Cnty. Dep’t of Human Res., 920 So.2d 565, 570 (Ala.Civ.App.2005)).
The entire transcript in this case is 31 pages long and contains very little relevant evidence. DHR presented only sparse evidence pertaining to the parents’ current circumstances with regard to their willingness or ability to properly parent the child. The evidence indicated that the child has been out of the parents’ custody for all of his life, and the juvenile court took judicial notice of the fact that the parents’ parental rights to the child’s siblings have been terminated. However, DHR did not present specific evidence regarding the parents’ reunification goals or the degree of their efforts to meet those goals. Rather,. Carden stated only that the parents had not met their reunification goals. DHR presented evidence indicating that the mother’s most recent drug screens were negative, and although the father had a positive drug screen, DHR failed to present evidence regarding the date of that test. The evidence indicated that the parents had regularly visited the child.
“Clear and convincing evidence” is “[e]v-idence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” § 6 — 11—20(b)(4), Ala.Code 1975. Given the paucity of evidence DHR presented in support of its petition to terminate the parents’ parental rights to the child, we conclude that the juvenile court erred in determining that DHR had met its burden of presenting clear and convincing evidence that grounds existed warranting the termination of the parents’ parental rights. Accordingly, we reverse the judgment. We note, however, that, if the situation warrants and the best interests of the child would be served, DHR may file a new petition to terminate the parents’ parental rights and seek to present evidence demonstrating that termination of the parents’ parental rights is appropriate.
2130757 — REVERSED.
2130758 — REVERSED.
All the judges concur.